## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| TREVOR GEIGER, an individual, <br> MARISA GEIGER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CAVALRY PORTFOLIO SERVICES, LLC, a Corporation; <br> CAVALRY SPV I, LLC, a corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

**COME NOW** the Plaintiffs, Trevor Geiger and Marisa Geiger ("Plaintiffs"), by and through counsel, and for Plaintiffs' Complaint against the Defendants state as follows:

1. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiffs' personal and financial privacy by the Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiffs.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

2. The Plaintiffs were sued by Equable Ascent Financial, LLC ("Equable")for a debt they allegedly owed.

3. Equable never had any intention of offering any proof at trial.

4. Instead, the lawsuit against Plaintiffs was filed in a hope of obtaining a default judgment or coercing Plaintiffs into paying on a debt Plaintiffs did not owe.

5. Plaintiffs won the lawsuit as it was dismissed with prejudice before trial.

6. Defendants now claim to own and/or collect on this nonexistent debt.

7. Despite the fact that Equable lost the collection action, Defendants have continued to attempt to collect this same alleged debt through credit reporting and other collection means.

## JURISDICTION

8. Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiffs in Alabama. All the actions described in this suit occurred in Alabama.

9. Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

10. Venue is proper as the Defendants do business in this judicial district.

## PARTIES

11. Plaintiffs Trevor Geiger and Marisa Geiger (hereinafter "Plaintiff" or "Geiger") are natural persons who are residents of this judicial district in Alabama, and are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

12. Defendant Cavalry Portfolio Services, LLC, ("Defendant" or "Cavalry[2]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama. It is a "debt collector" under the FDCPA. It is incorporated in Delaware and has its principal place of business in Arizona.

13. Defendant Cavalry SPV I, LLC, ("Defendant" or "Cavalry") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama. It is a "debt collector" under the FDCPA. It is incorporated in Delaware and has its principal place of business in Nevada.

---

[2] "Cavalry Portfolio Services, LLC" or "Cavalry SPV I, LLC" means Cavalry directly or through its debt collectors, employees and agents, credit reported against Plaintiffs, or otherwise took any collection action against Plaintiffs.

14. In this case, Defendants Cavalry Portfolio Services, LLC and Cavalry SPV I, LLC acted as agents for each other and all actions taken by one entity were taken on behalf of the other entity.

15. Defendants Cavalry Portfolio Services, LLC and Cavalry SPV I, LLC are hereinafter referred to collectively as "Cavalry."

16. Defendant Cavalry SPV I, LLC, upon information and belief, allegedly buys defaulted consumer debt.

17. Defendant Cavalry SPV I, LLC, assigns collection activities for the defaulted debt to Cavalry Portfolio Services, LLC.  This includes credit reporting.

18. These companies are operated from the same location, with the same ownership, and are otherwise treated as one company.

## FACTS

### RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

19. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

20. Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

21. Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

22. 15 USC § 1692 is entitled "Congressional Findings and Declaration of Purpose" and it states as follows:

   (a) There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.
   (b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
   (c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.
   (d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
   (e) It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## The District Court Complaint

23. On or about October 3, 2011, Equable Ascent Financial, LLC sued Plaintiffs in the Small Claims Court of Shelby County, Alabama, with a case number of SM-2011-900868.

24. This suit was filed by the Ingram Law Offices, LLC collection law firm.

25. In this suit, Equable Ascent Financial, LLC asserted it was the owner through assignment by HSBC of a certain debt allegedly owed by Plaintiffs.

26. Equable Ascent Financial, LLC alleged Plaintiffs owed Equable $1,682.08 plus attorneys' fees of $560.68.

27. Equable Ascent Financial, LLC also claimed court costs.

28. Equable Ascent Financial, LLC knew that Plaintiffs had never done business with Equable Ascent Financial, LLC.

29. No mention was made in the lawsuit that whoever sold the alleged debt to Equable Ascent Financial, LLC disclaimed the accuracy of the records.

30. Equable Ascent Financial, LLC knew Plaintiffs did not owe the debt sued on.

## Plaintiffs Answer The Equable Lawsuit

31. Plaintiffs did not and do not owe the debt to Equable.

32. Plaintiffs filed an Answer denying the allegations of Equable.

33. The Answer was filed on October 27, 2011 by Plaintiffs.

34. Equable received a copy of this denial.

35. Equable understood that Plaintiffs were refusing to pay on this debt.

36. Equable understood that Plaintiffs disputed this debt.

37. Equable knew Plaintiffs did not owe this debt.

38. Equable made a conscious choice to continue to allow the lawsuit to move forward even though Equable knew that there was no merit to the case, but Equable sought to use the lawsuit and the court process to force Plaintiffs to pay money on a debt Plaintiffs did not owe to Equable.

### Equable Files Motion to Dismiss

39. Prior to the trial, Equable filed a Motion to Dismiss the case without prejudice.

40. The Judge entered an Order of Dismissal on February 28, 2012 dismissing the case <u>with prejudice</u>.

41. Equable knew it had been caught and since it had no proof Plaintiffs owed it money, no appeal was filed.

42. This ended the case Equable filed against Plaintiffs.

### Defendant Cavalry Continues to Collect the Debt Even Though The Case was Dismissed With Prejudice

43. Even though the case had been dismissed with prejudice, sometime after the dismissal, Equable allegedly referred or assigned the account to Cavalry SPV I, LLC.

7

44. Since Equable had no debt owed by Plaintiffs to Equable, what Equable transferred was nothing to Defendant Cavalry SPV I, LLC.

45. Cavalry SPV I, LLC referred the account to Defendant Cavalry Portfolio Services, LLC who collects the defaulted debt of others.

46. Defendant Cavalry wrote to Plaintiffs on or about July 2, 2014 seeking payment on the very same account Equable had sued and lost in 2012.

47. The letter to Plaintiffs contain the follow information identifying Defendant Cavalry SPV I, LLC as the alleged Creditor and claiming Plaintiffs owe $1,682.08 on this HSBC debt.

48. This is the exact debt (and amount) as the failed 2011 Equable suit against Plaintiffs won in 2012.

### False Credit Reporting on Plaintiff's Credit

49. Defendant Cavalry is credit reporting this account which it knows Plaintiffs do not owe.

50. Defendant Cavalry has threatened to continue to credit report this debt which Defendant Cavalry knows Plaintiffs do not owe.

51. The credit reporting is false.

52. Defendant Cavalry failed to mark the account as disputed.

53. Defendant Cavalry knew, or should have known, that its credit reporting was false, violating 15 USC § 1692e(8) and state law.

54. Defendant Cavalry knew that Plaintiffs did not owe Defendant Cavalry any money on this debt.

55. Defendant Cavalry knew that Defendant Cavalry did not own the debt being credit reported.

56. The reason for the false credit reporting was to force the Plaintiffs into paying a debt not owed.

### Remaining Factual Allegations Against Defendant Cavalry

57. Defendant Cavalry is not the owner of this alleged debt.

58. Defendant Cavalry has attempted to collect debt from Plaintiffs when Plaintiffs did not owe any money to Defendant Cavalry on this account.

59. Defendant Cavalry has misrepresented the debt to Plaintiffs.

60. Defendant Cavalry has misrepresented the debt to the credit bureaus.

61. This includes the amount of the debt, as none is owed.

62. This includes the legal status of the debt, as none is owed.

63. Defendant Cavalry has threatened to take action it knows is illegal for Defendant Cavalry to take, in collecting this debt not owed and in credit reporting this debt not owed.

64. Defendant Cavalry knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiffs (and all others similarly situated) would be harassed, oppressed, and abused

by continuing to collect a debt after the court had dismissed the case with prejudice, by false credit reporting and by all other wrongful acts described in this Complaint.

65. The debt being collected is a consumer debt as defined by the FDCPA.

66. Plaintiffs are "consumers" as defined by the FDCPA.

67. Defendant Cavalry is a "debt collector" as defined by the FDCPA.

68. Defendant Cavalry has been repeatedly sued for false credit reporting on debts not owed by consumers.

69. Defendant Cavalry has been repeatedly sued for collecting debt after the collection action for the alleged debt has been lost by the collector.

70. Defendant Cavalry has full knowledge of what it is doing by its illegal collection activities.

71. The conduct of the Defendant Cavalry has proximately caused Plaintiffs past and future monetary loss, past and future damage to Plaintiffs' credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

72. It is a practice of the Defendant Cavalry to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

73. Defendant Cavalry knows its conduct is wrong, but it has chosen to conduct itself in this wrongful manner as a matter of corporate policy.

74. All actions taken by employees, agents, servants, debt collectors or representatives of any type for the Defendant Cavalry were taken in the line and scope of such individuals' employment, agency or representation.

75. All actions taken by the Defendant Cavalry were done with malice, were done willfully, and were done with either the desire to harm Plaintiffs and/or with the knowledge that its actions would very likely harm Plaintiffs and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

76. Defendant Cavalry has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Cavalry is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

77. Defendant Cavalry is liable to Plaintiffs through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees, and agents.

## SUMMARY

78. All of the above-described collection activities made to Plaintiffs by Defendant Cavalry were made in violation of the FDCPA, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692f and 1692f(1).

79. The above-detailed conduct by the Defendant Cavalry of harassing Plaintiffs in an effort to collect this debt was also an invasion of Plaintiffs' privacy and resulted in actual damages to the Plaintiffs.

80. This series of abusive collection actions by Defendant Cavalry caused Plaintiffs stress and anguish.

81. Defendant Cavalry's attempts to collect this debt from Plaintiffs and refusal to stop violating the law is an invasion of Plaintiffs' privacy and Plaintiffs' right to be left alone.

82. Plaintiffs have suffered actual damages as a result of these illegal actions by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## NEGLIGENT AND WANTON HIRING, TRAINING AND SUPERVISION

83. Defendant Cavalry negligently and/or wantonly hired, retained, trained or supervised incompetent debt collectors, employees, agents and collection

counsel and are thereby responsible to the Plaintiffs for the wrongs committed against Plaintiffs and the damages suffered by Plaintiffs.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

84. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

85. The acts and omissions of Defendant Cavalry constitute numerous and multiple violations of the FDCPA with respect to the Plaintiffs, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692f and 1692f(1).

86. As a result of Defendant Cavalry's violations of the FDCPA, Plaintiffs are entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Cavalry.

### COUNT II.

### INVASION OF PRIVACY

87. Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

88. State law recognizes Plaintiffs' right to be free from invasions of privacy and Defendant Cavalry violated state law as described in this Complaint.

89. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

90. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

91. Defendant Cavalry intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiffs' privacy.

92. Defendant Cavalry intentionally, recklessly, and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiffs' right to privacy.

93. Plaintiffs had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, private concerns or affairs, and private financial information.

94. The conduct of Defendant Cavalry, in engaging in the above-described illegal collection conduct against Plaintiffs, resulted in multiple intrusions and invasions of privacy by Defendant Cavalry which occurred in a way that would be highly offensive to a reasonable person in that position.

95. This also includes continuing to try to collect a debt from Plaintiffs, even after the dismissal with prejudice of the lawsuit that Defendant Cavalry knows Plaintiffs do not owe.

96. Defendant Cavalry has continued to publicly state through credit reporting that Plaintiffs owe the debt to Defendant Cavalry when Defendant Cavalry knows this is untrue.

97. All of the other wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant Cavalry in its campaign of improper debt collection which has led to the Plaintiffs' privacy being invaded.

98.  As a result of such intrusions and invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendant Cavalry.

99.  All acts of Defendant Cavalry were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Cavalry is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

100.  Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

101.  Defendant Cavalry's agents, employees, collection counsel and collectors are allowed and encouraged to break the law in order to collect debts.

102.  This includes all of the violations of the law described in this Complaint.

103.  Defendant Cavalry is aware of the wrongful conduct of its collectors, employees, agents and collection counsel.

104.  Defendant Cavalry negligently, wantonly, and/or intentionally hired, trained, retained, or supervised incompetent debt collectors, employees, agents and collection counsel who were allowed or encouraged to violate the law as was done to Plaintiffs, and Defendant Cavalry is thereby responsible to the

Plaintiffs for the wrongs committed against Plaintiffs and the damages suffered by Plaintiffs.

## COUNT IV.

## WANTON, MALICIOUS, AND INTENTIONAL CONDUCT

105. All paragraphs of this Complaint are expressly adopted and incorporated as if fully set forth herein.

106. Defendant Cavalry had a duty, and assumed a duty, to treat Plaintiffs fairly and with reasonable care.

107. Defendant Cavalry had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiffs.

108. Defendant Cavalry acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiffs as set forth in this Complaint.

109. Defendant Cavalry violated all of the duties Defendant Cavalry had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

110. It was foreseeable, and Defendant Cavalry did in fact foresee it, the actions of Defendant Cavalry would lead and did lead to the exact type of harm suffered by Plaintiffs.

111. Defendant Cavalry acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiffs as set forth in this Complaint.

112. Defendant Cavalry invaded the privacy of Plaintiffs as previously set forth under state law.

113. Such malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this Complaint.

114. As a result of this conduct, action, and inaction of Defendant Cavalry, Plaintiffs have suffered damages as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive, the total of which Plaintiffs claim more than $75,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

/s/

**M. Stan Herring (ASB-1074-n72m)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiffs**

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS CAUSE.**

/s/

Attorney for Plaintiffs

**Serve defendants via certified mail at the following address:**

Cavalry Portfolio Services, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

Cavalry SPV I, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104